# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BLUEFIELD DIVISION

| | | |
|---|---|---|
| **ROBERT R. COLEMAN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **CIVIL ACTION NO. 1:06-00418** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## M E M O R A N D U M   O P I N I O N

This is an action seeking review of the decision of the Commissioner of Social Security denying Plaintiff's application for Disability Insurance Benefits (DIB), under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. This case is presently pending before the Court on the parties' cross-Motions for Judgment on the Pleadings. (Doc. Nos. 13 and 14.) Both parties have consented in writing to a decision by the United States Magistrate Judge. (Doc. Nos. 4 and 8.)

The Plaintiff, Robert R. Coleman (hereinafter referred to as "Claimant"), filed an application for DIB on November 25, 2003, (protective filing date), alleging disability as of April 28, 2003, due to uncontrolled hypertension, cardiomyopathy, diabetes mellitus, congestive heart failure, and shortness of breath. (Tr. at 53, 54-56, 58.) The claim was denied initially and upon reconsideration. (Tr. at 30-32, 42-44.) On October 25, 2004, Claimant requested a hearing before an Administrative Law Judge (ALJ). (Tr. at 47.) The hearing was held on August 11, 2005, before the Honorable R. Neely Owen. (Tr. at 193-220.) By decision dated October 17, 2005, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 15-21.) The ALJ's decision became the final decision of the Commissioner on May 12, 2006, when the Appeals Council denied Claimant's request for

review. (Tr. at 5-8.) On May 25, 2006, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2004). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience.

20 C.F.R. §§ 404.1520(f), 416.920(f) (2004). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he had not engaged in substantial gainful activity since the alleged onset date. (Tr. at 15.) Under the second inquiry, the ALJ found that Claimant suffered from congestive heart failure, high blood pressure, diabetes mellitus, and chronic bronchitis, which were severe impairments. (Tr. at 16.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 16-17.) The ALJ then found that Claimant had a residual functional capacity for a significant range of light work as follows:

> [T]he claimant retains the residual functional capacity to lift up to twenty pounds; could sit, stand, and walk for up to six hours in an eight hour day; and could occasionally climb, balance, stoop, kneel, crouch and crawl. Additionally, he should avoid concentrated exposure to extreme cold/heat, fumes, odors, dusts, gases, poor ventilation, and hazards..

(Tr. at 18 and 20, Findings 5 and 9.) At step four, the ALJ found that Claimant could not return to his past relevant work. (Tr. at 18.) On the basis of testimony of a Vocational Expert ("VE") taken at the administrative hearings, the ALJ concluded that Claimant could perform jobs such as a cashier, file clerk, and watch guard/gate guard, at the light level of exertion. (Tr. at 19.) On this basis, benefits were denied. (Tr. at 19-20.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was

3

defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was born on October 9, 1955, and was 49 years old at the time of the administrative hearing. (Tr. at 18, 54, 199.) Claimant had a high school education. (Tr. at 18, 64, 200.) In the past, he worked as a school bus driver. (Tr. at 15, 81-87, 201-02, 214.)

The Medical Record

The Court has reviewed all the evidence of record, including the medical evidence, and will discuss it below in relation to Claimant's arguments.

Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the Commissioner's decision is not supported by substantial evidence because the ALJ erred in discounting the opinion and physical residual functional capacity assessment of Claimant's treating cardiologist, Dr. A. R. Piracha, M.D., and according greater

weight to the opinion of a non-examining state agency physician. (Pl.'s Br. at 4-10.) The Commissioner asserts that Claimant's argument is without merit and that substantial evidence supports the ALJ's decision. (Def.'s Br. at 9-14.)

Analysis

In evaluating the opinions of treating sources, the Commissioner generally must give more weight to the opinion of a treating physician because the physician is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. See 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2004). Nevertheless, a treating physician's opinion is afforded "controlling weight only if two conditions are met: (1) that it is supported by clinical and laboratory diagnostic techniques and (2) that it is not inconsistent with other substantial evidence." Ward v. Chater, 924 F. Supp. 53, 55 (W.D. Va. 1996); see also, 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2004). The opinion of a treating physician must be weighed against the record as a whole when determining eligibility for benefits. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2004). Ultimately, it is the responsibility of the Commissioner, not the court to review the case, make findings of fact, and resolve conflicts of evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). As noted above, however, the court must not abdicate its duty to scrutinize the record as a whole to determine whether the Commissioner's conclusions are rational. Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

If the ALJ determines that a treating physician's opinion should not be afforded controlling weight, the ALJ must then analyze and weigh all the evidence of record, taking into account the factors listed in 20 C.F.R. §§ 404.1527, 416.927. These factors include: (1) Length of the treatment relationship and frequency of evaluation, (2) Nature and extent of the treatment relationship, (3)

Supportability, (4) Consistency, (5) Specialization, and (6) various other factors. Additionally, the regulations state that the Commissioner "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." Id. §§ 404.1527(d)(2), 416.927(d)(2).

Under §§ 404.1527(d)(1) and 416.927(d)(1), more weight is given to an examiner than to a non-examiner. Sections 404.1527(d)(2) and 416.927(d)(2) provide that more weight will be given to treating sources than to examining sources (and, of course, than to non-examining sources). Sections 404.1527(d)(2)(I) and 416.927(d)(2)(I) state that the longer a treating source treats a claimant, the more weight the source's opinion will be given. Under §§ 404.1527(d)(2)(ii) and 416.927(d)(2)(ii), the more knowledge a treating source has about a claimant's impairment, the more weight will be given to the source's opinion. Sections 404.1527(d)(3), (4), and (5) and 416.927(d)(3), (4), and (5) add the factors of supportability (the more evidence, especially medical signs and laboratory findings, in support of an opinion, the more weight will be given), consistency (the more consistent an opinion is with the evidence as a whole, the more weight will be given), and specialization (more weight given to an opinion by a specialist about issues in his/her area of specialty).

On April 28, 2003, Claimant presented to the emergency room of Princeton Community Hospital with complaints of shortness of breath, which had persisted for two weeks but worsened while driving a school bus. (Tr. at 108.) An electrocardiogram revealed normal sinus rhythm and a complete left bundle branch block. (Tr. at 121.) Chest x-rays revealed cardiomegaly and early mild congestive heart failure. (Tr. at 118.) Claimant was diagnosed with mild dyspnea and bronchitis with bronchospasm and was discharged. (Tr. at 113, 117.)

Subsequent to his emergency room visit, Claimant initiated treatment with Dr. Piracha on May 6, 2003. (Tr. at 184.) Dr. Piracha noted Claimant's complaints of dyspnea on exertion and some leg edema. (Id.) Physical examination of Claimant revealed normal cardiovascular sounds, clear lungs, no edema of the extremities, and no neurological problems. (Id.) Dr. Piracha diagnosed congestive heart failure in the presence of left bundle branch block, hypertension, and diabetes mellitus. (Id.)

Claimant underwent a Persantine Cardiolite Myocardial Perfusion Scan on May 15, 2003, which revealed a moderately depressed ejection fraction at 34% and global hypokynesia. (Tr. at 122.) On June 11, 2003, cardiologist Joseph L. Austin, M.D., performed a cardiac catheterization, which revealed severe global hypokinesis and markedly elevated end diastolic pressure of the left ventricle. (Tr. at 158, 159-62.) Dr. Austin opined that Claimant's "recent heart failure and left ventricular dysfunction [were] all related to hypertensive cardiovascular disease." (Tr. at 158.) He prescribed Accupril, and encouraged Claimant to follow a strict diet and regular walking program. (Tr. at 158, 162.)

A pulmonary function test conducted on October 6, 2003, revealed mildly reduced flow vital capacity of 70%, flow rate of 73%, and forced expiratory volume of 2.3 liter. (Tr. at 131.) The lung volume was essentially unremarkable, the diffusion capacity was within normal limits, but the airway resistance was somewhat increased and the flow volume loop was consistent with restrictive lung disorders. (Tr. at 131, 183.) Dr. Vishnu Patel, M.D., diagnosed mild airway obstruction with components of restrictive lung disorders. (Tr. at 131, 183.) He recommended correlation with chest x-rays to explore chronic heart failure, pleural effusion, or interstitial lung disorders. (Id.)

Claimant was again examined by Dr. Piracha on October 14, 2003. (Tr. at 181.) Physical exam revealed no cough, chest pain, or palpitations; clear lungs with no wheezing, rales, or rhonchi; normal heart sounds with no murmur or gallop; and no edema of the extremities. (Id.) Dr. Piracha added Norvasc 10mg. (Id.) Claimant returned to Dr. Piracha two weeks later, at which time Claimant remained hypertensive but otherwise had no complaints or significant findings. (Tr. at 180.) On December 8, 2003, Dr. Piracha again examined Claimant and noted that his blood pressure was much better than before and that he had lost weight. (Tr. at 179.) He noted that Claimant continued to have some dyspnea on exertion, but not at rest. (Id.) Physical exam revealed no chest pain, palpitations, wheezing, rales, rhonchi, or edema. (Id.)

A state agency physician completed a form Residual Functional Capacity Assessment (Physical) on January 21, 2004. (Tr. at 142-52.) The physician opined that Claimant was capable of performing work at the light exertional level, limited to occasional climbing, balancing, stooping, kneeling, crouching, and crawling. (Tr. at 146-47.) The physician further opined that Claimant should avoid concentrated exposure to temperature extremes, wetness, fumes, odors, gases, poor ventilation, and hazards, such as machinery and heights. (Tr. at 149.)

On February 10, 2004, Claimant returned to Dr. Piracha for a follow-up examination regarding his hypertension and obesity. (Tr. at 178.) Dr. Piracha noted that Claimant had not done well at all in losing weight or controlling his blood pressure. (Id.) He further noted that Claimant was having problems with anxiety. (Id.) Nevertheless, Claimant's physical exam essentially was normal. (Id.) Dr. Piracha advised Claimant to lose weight and to return in two months. (Id.)

Dr. Piracha completed a Physical Medical Source Statement of Ability to do Work-Related Activities on February 20, 2004, on which he opined that during an eight-hour workday, Claimant

could lift/carry 20 pounds occasionally and frequently, stand/walk less than two hours, sit for about two hours, frequently balance, and occasionally climb, stoop, crouch, kneel, and crawl. (Tr. at 153-54.) Dr. Piracha further opined that Claimant required a sit-stand option but would not need either to alternate periodically among sitting, standing, or walking to relieve discomfort, or lie down. (Tr. at 154.) He also opined that Claimant's ability to reach, handle, feel, push/pull, see, hear, and speak was unlimited. (Tr. at 155.) Finally, Dr. Piracha opined that Claimant's impairments would cause him to miss work more than three times a month. (Tr. at 156.)

Claimant had a follow-up visit with Dr. Piracha on March 17, 2004, at which time he reported that he had begun a program to lose weight and was exercising daily. (Tr. at 177.) His exam was normal and Dr. Piracha directed him to return in two months. (Id.) Claimant returned on June 7, 2004, reporting that he became hypoglycemic three hours after eating. (Tr. at 173.) Dr. Piracha noted that Claimant's blood sugar was getting controlled although his weight was not. (Id.) His exam was otherwise normal. (Id.)

Another state agency physician completed a further form Residual Functional Capacity Assessment (Physical) on June 30, 2004. (Tr. at 163-69.) The physician opined that Claimant was capable of performing work at the light exertional level, which included lifting 20 pounds occasionally, 10 pounds frequently, sitting, standing, and walking six hours out of an eight hour workday, and pushing/pulling was unlimited. (Tr. at 164.) The physician further limited Claimant to occasional climbing, balancing, stooping, kneeling, crouching, and crawling, and limited him from concentrated exposure to temperature extremes, wetness, humidity, fumes, odors, dusts, gases, poor ventilation, and hazards. (Tr. at 165-66.)

The physician reviewed Dr. Piracha's assessment and considered it "partially credible." (Tr. at 167.) The state agency physician noted that Claimant's cardiac condition was stable, his lungs were clear, he was exercising daily, and he had no gallop or edema. (Id.) In making his assessment, the state agency physician specifically considered the May 15, 2003, myocardial perfusion study, the June 11, 2003, cardiac catheterization; the October 6, 2003, pulmonary function study; and Dr. Piracha's treatment notes dated December 8, 2003, March 17, 2004, and June 7, 2004. (Tr. at 168.)

On September 13, 2004, Claimant was again examined by Dr. Piracha. (Tr. at 172.) Dr. Piracha found that Claimant had done much better over the last three months, with no complaints of chest pain, orthopnea, or edema. (Id.) He noted that Claimant was gradually losing weight and that his exam was essentially normal. (Id.) Dr. Piracha continued Claimant on his same medications and advised him to return in three months. (Id.)

Claimant returned to Dr. Piracha on November 12, 2004, with reports of cold-like symptoms. (Tr. at 171.) On exam, Dr. Piracha noted distant lung sounds. (Id.) Claimant reported that he had stopped taking his blood pressure medication and Dr. Piracha advised him not to make any changes in his treatment. (Id.) On February 22, 2005, Claimant's blood pressure was elevated but his exam was otherwise normal. (Tr. at 170.) Dr. Piracha advised Claimant that he needed to lose weight, which may lower his blood pressure. (Id.)

Claimant returned to Dr. Piracha on May 24, 2005. (Tr. at 190.) Dr. Piracha noted that Claimant was walking two miles a day but was not losing weight. (Id.) The review of systems and physical exam however, was "totally negative." (Id.) Dr. Piracha recommended that Claimant continue his medications and again suggested that he lose weight. (Id.)

In his decision, the ALJ noted Claimant's treatment with Dr. Piracha, and Dr. Piracha's assessment. (Tr. at 16-18.) He accorded his opinion little weight, however, because it was inconsistent with Dr. Piracha's treatment notes, which reflect "normal examinations other than high blood pressure and obesity." (Tr. at 17.) Nevertheless, Dr. Piracha limited Claimant to sitting, standing, and walking to less than eight hours a day, and indicated that he would miss three days of work a month due to his impairments. His treatment notes, however, reflected no abnormal findings. Although not specifically stated in his opinion, it is clear therefore, that the ALJ questioned the bases for Dr. Piracha's assessed limitations. On April 28, 2003, Claimant's electrocardiogram revealed complete left bundle branch block, and on May 15, 2003, a myocardial perfusion scan revealed a reduced left ventricular ejection fraction of 34%. A pulmonary function study on October 6, 2003, revealed only mildly reduced flow capacity, flow rate, and forced expiratory volume. Claimant underwent a cardiac catheterization on June 11, 2003, which revealed normal coronary arteries but severe left ventricular dysfunction, most likely related to hypertensive cardiovascular disease. Dr. Austin recommended that Claimant follow a strict diet and a regular exercise program. Following the surgery, Dr. Piracha's treatment notes reflect continued obesity and hypertension, which was controlled conservatively with medications and recommendations that he adhere to a strict diet to lose weight and daily exercise. Dr. Piracha's treatment notes reflect normal heart sounds; an absence of complaints of chest pain, orthopnea, or palpitations; no edema of the extremities; and clear lungs, with one exception of distant lung sounds in November, 2004. The notes do not contain any findings, clinical or otherwise, which suggest that Claimant's obesity or hypertension limited his ability to walk, stand, and sit to two hours a day.

Additionally, the ALJ noted that Claimant testified that he walked three miles a day when the weather was not humid, that he ran errands, was able to drive for one hour at a time, and did light household chores, such as dishes and dusting. (Tr. at 17.) Although Claimant argues that the ALJ improperly relied on his testimony regarding his activities to discredit Dr. Piracha's opinion, the Court finds that the lack of information in Dr. Piracha's treatment notes, and the record as a whole, in addition to Claimant's testimony, supports the ALJ's finding. In view of the medical record and Claimant's reported activities, the ALJ found that the June 30, 2004, state agency physician's opinion was more consistent with the record as a whole, including all the medical and treatment notes and Claimant's reported activities. At the administrative hearing, Claimant testified that he walked three miles a day on flat surface and that Dr. Piracha wanted him to increase his walking. (Tr. at 206.) He testified that he watches television, works on the computer, reads, plays video games, visits with friends and has friends visit him, does the dishes and minimal household tasks, sweeps and dusts a little, and drives 54 miles without difficulty. (Tr. at 207-08.) Claimant asserted that he experienced shortness of breath on walking one flight of stairs. (Tr. at 205.) He additionally reported going to the post office daily to get his mail and to the store when necessary. (Tr. at 209.)

The state agency physician's opinion is consistent with Dr. Piracha's treatment notes, which reflected that Claimant's cardiac condition was stable, his lungs were clear, he had no gallops, murmurs, or edema, and that he exercised daily. It is further consistent with the clinical evidence. reflecting a stable cardiac condition, clear lungs, normal heart sounds, and the absence of edema, as well as Claimant's reported activities to the extent that they are supported by the record. The Regulations provide that state agency medical and psychological consultants are "highly qualified

12

physicians and psychologists who are also experts in Social Security disability evaluation" whose opinions must be considered as opinion evidence. 20 C.F.R. § 404.1527(f)(2)(I) (2004).

The Court finds that the ALJ properly considered the evidence of record and the opinions and physical RFC assessments of Dr. Piracha and the state agency physician in accordance with the applicable law and Regulations, and the ALJ's finding is supported by substantial evidence. Accordingly, Claimant's argument is without merit.

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision is supported by substantial evidence. Accordingly, by Judgment Order entered this day, the Plaintiff's Motion for Judgment on the Pleadings (Doc. No. 13.) is **DENIED**, Defendant's Motion for Judgment on the Pleadings (Doc. No. 14.) is **GRANTED**, the final decision of the Commissioner is **AFFIRMED**, and this matter is **DISMISSED** from the docket of this Court.

The Clerk of this Court is directed to send a copy of this Memorandum Opinion to counsel of record.

ENTER: September 27, 2007.

R. Clarke VanDervort
United States Magistrate Judge